CONSOLE LAW OFFICES LLC
Carol Mager, Esquire
Stephen G. Console, Esquire
Laura C. Mattiacci, Esquire
Jennifer Grissom, Esquire
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
(856) 854-4000
(856) 854-4006 (facsimile)
(215) 545-7676 (Philadelphia office)

DOFFERMYRE SHIELDS
CANFIELD & KNOWLES, LLC
Martha Fessenden, Esquire
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309
404-881-3008
404-881-3007 (fax)

GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
Darnley D. Stewart, Esquire
11 Broadway, Suite 2150
New York, NY 1004
212-500-5106
212-414-0347 (fax)

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CAROL BELL, on behalf of herself and those similarly situated | : : : : | CIVIL ACTION NO. 08-6292 |
| | : : | Electronically Filed |
| Plaintiff, | : : | |
| v. | : : : | |
| LOCKHEED MARTIN CORPORATION and its wholly owned or controlled subsidiaries 6801 Rockledge Drive Bethesda, MD 20818 | : : : : : : : | CLASS ACTION JURY TRIAL DEMANDED |
| Defendant. | : : | (Assigned to Honorable Judge N. Hillman) |

1

## PLAINTIFF'S MOTION SEEKING LEAVE TO SUBMIT A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15 AND THE COURT'S JULY 31, 2009 SCHEDULING ORDER

Plaintiff, Carol Bell, through her undersigned attorneys, moves this Honorable Court pursuant to Federal Rule of Civil Procedure 15 and the Court's July 31, 2009 Scheduling Order for leave to submit a Second Amended Complaint. Plaintiff asserts:

1. Plaintiff filed a Complaint on December 23, 2008. Plaintiff included the facts that had occurred up to the time of her filing the Complaint that supported her claims that Defendant discriminated against her based on her sex and retaliated against her for her complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD").

2. Plaintiff filed a First Amended Complaint on March 18, 2009. Plaintiff included the facts that had occurred up to the time of her filing the First Amended Complaint that supported her claims that Defendant discriminated against her based on her sex and retaliated against her for her complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD").

3. After Plaintiff filed her Complaint and First Amended Complaint, Plaintiff was subjected to further sex-based discrimination and retaliation.

4. On February 5, 2009, Plaintiff applied for a Senior Program Manager (S-SBMD PPMP Implementation Lead) position in the MS2 business unit in Moorestown, New Jersey. This was a L6 position, and Plaintiff learned of it through the company-wide Career Network. Plaintiff was interviewed for this position on or about March 11, 2009. Plaintiff learned on or about April 2, 2009, that Defendant chose Mary Johnson for the position. Plaintiff was told that Ms. Johnson was chosen in part because Ms. Johnson had customer interface experience at the admiral level. Typically employees with customer interface experience at the admiral level are Directors or Vice Presidents, which are L7 and above positions. Ms. Johnson is overqualified for this L6 position and is another example of a female employee having a lower grade job than male employees with similar or lesser qualifications. Additionally, upon information and belief, Ms. Johnson has not complained of discrimination. The decision-maker was Carmen Valentino (male).

5. On April 24, 2009, Plaintiff applied for a Program Management Senior Manager position in the MS2 business area in Moorestown, New Jersey. This was a L6 position, and Plaintiff learned of it through the company-wide Career Network. Plaintiff was not interviewed for this position. On May 19, 2009, Plaintiff learned that the position had been awarded to Spiros Koulas, a male employee, who, upon information and belief, had not complained of discrimination. Upon information and belief, Plaintiff

3

was more qualified for the position than Mr. Koulas. The decision maker was Allan Croly (male).

6. In June 2009, Plaintiff learned that Mike Mahon was promoted to a Director-level position for which she was more qualified. Upon information and belief, Mr. Mahon had not complained of discrimination. The position was never posted.

7. Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's ongoing discriminatory treatment of Plaintiff, including Defendant's failure to promote Plaintiff for the three (3) positions referenced above.

8. Plaintiff's complaints of, and opposition to, illegal sex discrimination were determinative and/or motivating factors in connection with Defendant's retaliatory treatment of Plaintiff, including Defendant's failure to promote Plaintiff for the three (3) positions referenced above.

9. On September 29, 2009, Plaintiff filed her fifth EEOC Charge setting forth Defendant's failure to promote her in the positions referenced above. Plaintiff sent a courtesy copy of the EEOC Charge to Defendant's counsel the same day to make Defendant aware of Plaintiff's most recent claims.

10. After Plaintiff filed her First Amended Complaint, other female employees who are similarly situated to Plaintiff have come forward to be included in the Class Action as named plaintiffs.

11. Linda Abt is a current female employee of Lockheed Martin in its King of Prussia, Pennsylvania office who has come forward to be a named plaintiff

in the Class Action since Plaintiff filed her First Amended Complaint. Beginning in approximately November 2003, Ms. Abt was the Manager of Management and Data Systems' Engineering Leadership Development Program ("ELDP") and was a L5 manager. During that time, she worked in Defendant's IS & GS business unit.

12. In or around late 2007, Ms. Abt applied for a position in Defendant's Enterprise Information Services ("EIS") unit through the company-wide Career Network. Ms. Abt was awarded the position, and she became a Resource Manager on or about January 15, 2008, which was also a L5 position.

13. In October, 2008, Defendant re-organized and Ms. Abt was given the title of Software Development Analysis Manager and remained a L5 manager. That same month, the EIS unit began being known as Enterprise Business Services ("EBS").

14. In December 2008, there was another re-organization in which Ms. Abt kept her title and L5 grade. Ms. Abt began reporting to Bonnie Eicher with this re-organization. Ms. Eicher reported to Bettye Smith, Director of Technical Operations Software.

15. As of August 17, 2009, Ms. Abt is a System Integration Analyst Senior Staff. Ms. Abt is no longer a L5 manager; now she has been downgraded to an E5 employee after she complained of discrimination.

16. In or about December 2007, Ms. Abt was given an unfairly negative review because of her sex by her supervisor at the time, Don Hauser (male). Mr.

5

Hauser had frequently made comments displaying a bias against females. Upon information and belief, that unfair review has effected and continues to effect, Ms. Abt's compensation and opportunities for advancement.

17. Upon information and belief, since at least January 2008, Ms. Abt has been paid less than her male comparators and categorized at a lower level grade than comparable male employees despite performing comparable work. Prior to that time, Ms. Abt does not know what comparable male employees were paid.

18. In or about December 2008, Ms. Abt was given an annual performance evaluation by an individual who had only supervised her for approximately two (2) months and who did not take into account her contributions in the previous position which she had held for ten (10) months. This evaluation gave Ms. Abt an overall score of "Basic" which was not warranted by her performance ("Basic" is the fourth out of five possible ratings, above only "Unsatisfactory.").

19. Upon information and belief, Defendant's Enterprise Operations centrally assigns "quotas" for each department of how many people need to receive each type of scores and, if too many employees receive high scores, Defendant will instruct that some scores be lowered, regardless of that employee's actual performance. Upon information and belief, Ms. Abt's score, rather than any male comparator, was lowered based on these quotas rather than on her actual performance.

20. As a result of the December 2008 re-organization, when Ms. Abt was reporting to Ms. Eicher, she was the only female out of 6 individuals reporting to Ms. Eicher. Upon information and belief, three (3) of her male comparators were in L6 positions, including John Bradish who had essentially the same job as Ms. Abt. Mr. Bradish had the "West Coast" portion of the "Web Team" and Ms. Abt had the "East Coast" portion. Ms. Abt also was working as an Engineering Manager on a special project, a responsibility which Mr. Bradish did not have. As a result of being graded below her male colleagues, or otherwise, Ms. Abt receives lower compensation than male employees.

21. In or about January 2009, Defendant posted on its company-wide "Career Network" an opening for Ms. Abt's former job, which she had held successfully from 2003 until January 2008. Although Defendant had kept Ms. Abt at the L5 level while she was in that position, a L6 employee assumed her job duties. At the time that the position was posted in January 2009; however, the duties had been split into two jobs, one to be filled by a L5 manager and one to be filled by a L4 manager. Ms. Abt was qualified and had successfully performed each of the jobs as she had previously been responsible for the duties of both positions simultaneously.

22. On or about March 4, 2009, Ms. Abt was informed that the L5 position had gone to Michael Thornton, a male with less experience and fewer qualifications. Mr. Thornton had never even held a manager-level position

7

before, much less the exact job duties at issue, as Ms. Abt had. Ms. Abt was told by a member of the interview team that allegedly Mr. Thornton had performed better during the interview and had better "past performance." Ms. Abt was also told that "upper management" had gotten involved. These reasons are a pretext for sex discrimination, as Ms. Abt had been told by a member of the interview panel that she was "hands down" the best candidate and had given the best interview. Ms. Abt also was advised that out of the six members of the panel, four had selected Ms. Abt for the position but "management" had intervened to select Mr. Thornton.

23. The L4 position also was awarded to a male, William D'Abbenne, who did not have as much seniority with Defendant as Ms. Abt did, and who was less qualified than Ms. Abt for the position as he did not have experience with the exact job duties at issue like Ms. Abt had. Ms. Abt was not interviewed for this position.

24. Ms. Abt filed an EEOC Charge of Discrimination on April 21, 2009, complaining of sex discrimination. A copy of the Charge was sent to Defendant's counsel on April 27, 2009. Since filing the Charge, Ms. Abt has been subjected to additional discrimination based on her sex and retaliation for complaining about the same.

25. In July 2009, Ms. Abt's department adopted a new promotion policy that an employee must receive one of the two highest performance review ratings, "High Contributor" or "Exceptional Contributor" to be eligible for

promotion. Due to Defendant's "bell curve" evaluation system in which male employees provide subjective ratings that result in women being disproportionately rated 3 (average) or below, this new policy has an adverse impact on female employees, including Ms. Abt, who seek promotions.

26. During the week of August 10, 2009, Ms. Abt was told that Defendant would undergo a re-organization. On or about August 13, 2009, Ms. Abt received an e-mail with her new title and grade level, System Integration Analyst Senior Staff (E5). Ms. Abt also learned that her new manager was Knute Leidal (male). With this re-organization Ms. Abt had been downgraded from a L5 manager to an E5 employee. She lost her direct reports who would instead report to Steve Boffa (L5), John Yichuck (L5), and Patrick Vondra (L6), all male employees whom Defendant let keep their job grades in the re-organization. Upon information and belief, none of these male employees had complained of discrimination.

27. When Ms. Abt saw her new job title and job description, she sent an e-mail to Ms. Eicher and Mr. Leidal to express her concern that her new job and title did not match her skill set and that she was being set up to fail. Her new job required a skill set that Ms. Abt had not had in her twenty-year career. Ms. Abt knew that other positions, such as System Engineer Senior Staff and Database Analyst Senior Staff positions, were available and better suited to her skill set, so she offered to take on one of these positions instead.

28. Approximately two (2) weeks later, Ms. Abt met with Mr. Leidal and again expressed her concern that she was being set up to fail with the new position. Ms. Abt said that she was concerned that she would be rated as a "Basic Contributor" again since she did not have the skill set for the position and that a second "Basic Contributor" rating would result in her being placed on a Performance Improvement Plan ("PIP"). Then a PIP could be used to justify her termination later. Mr. Leidal told Ms. Abt that job titles did not matter and that she should not worry about being set up to fail. Mr. Leidal did not change her job title or grade.

29. After this meeting, Ms. Abt attended a meeting in which Sharon Watts, the Vice President of Technical Operations, explained that Defendant was changing its performance review policy this year to consider and base an employee's review rating in part on an employee's skill set in comparison with other employees who have the same job title. Thus, Ms. Abt's new title that does not match her skill set will make it difficult for her to compete with her peers and receive a positive performance review rating this year. A second performance rating of "Basic Contributor" will result in a PIP, which will eliminate Ms. Abt's ability to be promoted and also will result in her receiving less compensation.

30. Ms. Abt's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Ms. Abt.

31. Ms. Abt's complaints of, and opposition to, illegal sex discrimination were determinative and/or motivating factors in connection with Defendant's

retaliatory treatment of Ms. Abt, including Defendant's demoting her to her current E5 position after she filed her EEOC Charge.

32. Ms. Abt filed an EEOC Charge of Discrimination on April 21, 2009, complaining of sex discrimination. A copy of the charge was sent to Defendant's counsel on April 27, 2009 to make Defendant aware of Ms. Abt's claims. Ms. Abt will file an EEOC Charge on October 7, 2009, regarding the retaliation and continued discrimination that she has experienced since filing her first Charge and will send a courtesy copy to Defendant's counsel to put Defendant on notice of her claims.

33. Maxine Walker is another current female employee of Lockheed Martin who has come forward to be a named plaintiff in the Class Action since Plaintiff filed her First Amended Complaint. Ms. Walker was hired by Defendant in or about 2003 for a Lead Position in the Human Resources department (E4) of the Aeronautics business unit. Ms. Walker's current position is Project Management (E4) in the Human Resources department of Aeronautics.

34. Since 2003, Ms. Walker has been paid less than her male comparators. By way of example only, Al Butler, a Recruiter (E4), is paid more than Ms. Walker.

35. In or about January or February 2009, Defendant failed to promote Ms. Walker into an open position (University Relations Manager) (L5) because of her sex, and this continues to detrimentally affect her compensation to this day.

36. Ms. Walker was told in or about March 2009 that with regard to Defendant's failure to promote her into the University Relations Manager position that another applicant, Eric Williams (male) was a better choice. This stated reason was a pretext for sex discrimination, as Ms. Walker has college recruiting experience, which is required for the position; whereas, Mr. Williams does not. Also, Ms. Walker has more leadership experience than Mr. Williams.

37. Ms. Walker's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Ms. Walker.

38. On August 27, 2009, Ms. Walker filed a charge of discrimination with the EEOC setting forth her claims of sex-based discrimination. A courtesy copy of the EEOC Charge was sent to Defendant's counsel the same day to make Defendant aware of Ms. Walker's claims.

39. On July 31, 2009, this Court entered a Scheduling Order for this matter. The Order allows the parties to seek amendments to the pleadings or add parties until October 30, 2009.

40. On September 28, 2009, Plaintiff's counsel sought Defendant's counsel's consent to file a Second Amended Complaint to include Plaintiff's most recent claims and the claims of Ms. Abt and Ms. Walker that arose after she filed her First Amended Complaint on March 18, 2009 (see Plaintiff's Second Amended Complaint attached hereto as Exhibit "A". The highlighted portions reflect the additional information added to the Second Amended Complaint).

41. On October 5, 2009, Defendant's counsel informed Plaintiff's counsel that they have had insufficient time to review the Amended Complaint and that after they complete their review, they will notify Plaintiff's counsel of Defendant's position. Therefore, Defendant's counsel does not consent to Plaintiff filing a Second Amended Complaint at this time.

42. This motion is made in good faith.

In support of this Motion, Plaintiff submits an accompanying Memorandum of Law.

Dated: October 6, 2009

Respectfully submitted,

CONSOLE LAW OFFICES LLC

By: s/Jennifer Grissom
Carol Mager
Stephen G. Console
Laura C. Mattiacci
Jennifer Grissom
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
215-545-7676
215-545-8211 (fax)
mager@consolelaw.com
console@consolelaw.com
mattiacci@consolelaw.com
grissom@consolelaw.com

DOFFERMYRE SHIELDS
CANFIELD & KNOWLES, LLC

Martha Fessenden
1355 Peachtree Street
Suite 1600
Atlanta, GA 30309
404-881-3008
404-881-3007 (fax)
mfessenden@dsckd.com

GISKAN SOLOTAROFF
ANDERSON & STEWART LLP

Darnley D. Stewart
11 Broadway, Suite 2150
New York, NY 1004
212-500-5106
212-414-0347 (fax)
dstewart@gslawny.com

Attorneys for Plaintiff,
Carol Bell, and those similarly
situated