## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                                            :
CAROL BELL, on behalf of herself and          :
those similarly situated,                                :
                                                            :
                            Plaintiff,               :          Civil No. 08-6292 (RBK/AMD)
                                                            :
                    v.                                   :          **OPINION**
                                                            :
LOCKHEED MARTIN CORPORATION,       :
                                                            :
                            Defendant.            :
_____:

**KUGLER**, United States District Judge:

This is an employment discrimination case. Plaintiff asserts individual claims for gender

discrimination and retaliation under Title VII and the New Jersey Law Against Discrimination

("NJLAD"). She also asserts Title VII and NJLAD class-action gender discrimination claims on

behalf of a putative class of women employed by Defendant Lockheed Martin Corporation

("Lockheed"). The core of Plaintiff's claims is that certain of Lockheed's company-wide policies

and practices have a disparate impact on female employees' compensation and advancement.

This matter comes before the Court pursuant to an appeal by Lockheed regarding several

rulings by Magistrate Judge Donio in two related opinions dated June 23, 2010 (Doc. Nos. 207 &

208). Lockheed appeals Judge Donio's rulings: (1) allowing Plaintiff discovery of employee age

and race data as well as information regarding Lockheed's policies and practices for identifying

and addressing forms of discrimination other than gender discrimination; (2) allowing Plaintiff

discovery regarding Lockheed's officer-level and director-level positions; and (3) granting

Plaintiff leave to amend her complaint to join two new named plaintiffs.

For the reasons discussed below, this Court denies Defendant's appeal on all three issues

and affirms Judge Donio's rulings.

## I.     BACKGROUND

### A.     Plaintiff's Claims and Putative Class-Action Suit

Plaintiff is a current employee of Lockheed and has been employed by the company at

various times from 1978 until the present, for a total of approximately twenty-one years.

Between 1978 and 2003, Plaintiff held various "leadership-level" positions, which are designated

internally as "L" positions.[1]  From February 2003 until April 2004, Plaintiff worked as a

Procurement Engineer (L4).  She was then made a Program Manager (L5).  From June 2005 to

the present, she has been a Senior Manager.  She has always worked within the same department

at Lockheed's Mt. Laurel, New Jersey facility.

Plaintiff asserts an individual and class-action claim for gender discrimination under Title

VII of the Civil Rights Act of 1964 and 1991, as amended, 42. U.S.C. §2000e et seq.  Plaintiff's

Second Amended Complaint defines the putative class as "[a]ll persons who are female and who

were, are, or will be employed by [Defendant] in 'E' or 'L' designated positions as levels 3, 4, 5,

or 6 in the United States of American from March 21, 2007 through the date of the final

disposition of this action . . . ."  (Second Am. Compl. ¶ 20).  Plaintiff also asserts individual and

---

[1] Plaintiff alleges that two of Lockheed's salaried position job codes are "L" and "E."  The "L" level designates a leadership position.  The "E" level designates an exempt position.  L3 and E3 are the entry level positions.  Any position specified E7 or L7 and above (i.e., E7, E8, E9, L7, L8, L9) is considered a director-level position or above.

class-action claims under the NJLAD on behalf of a proposed subclass of plaintiffs employed by Lockheed in the State of New Jersey. Plaintiff further asserts individual retaliation claims under both Title VII and the NJLAD.

Plaintiff alleges that Lockheed "discriminates against its salaried female employees by advancing male employees more quickly than equally or more qualified female employees through middle management and into upper management level positions, and discriminates in compensation to these female employees, including with respect to pay grade, annual and promotional increases, merit pay increases and bonuses." (Second Am. Compl. ¶ 1). She alleges that disparities between male and female employees "are the result of policies and practices that purposefully discriminate against women." (Id.). Specifically, she claims that although all available lower-level positions are posted on the company's intranet, Lockheed has a company-wide policy that available director and officer positions (levels L7 and above) are not to be posted on the intranet. Thus, the only means of learning about those open positions is by word of mouth, which purportedly has a disparate impact on female employees. Additionally, Plaintiff claims that company-wide minimum criteria for all director and officer-level positions are nominal and have the effect of eliminating all but subjective criteria with respect to education and experience, which permits decision-makers to act in a discriminatory manner.

Regarding her individual discrimination claim, Plaintiff alleges various instances of discrimination regarding advancement opportunities and salary discrepancies beginning in 2005, while she was under the immediate supervision of Mr. Douglas Goerke. She alleges that between June 2005 and November 2006 she unsuccessfully applied for at least eighteen different positions within the company. She claims that her lack of success in advancing to any of those

positions is attributable to her gender and Defendant's company-wide discriminatory policies and practices. She also claims that her immediate supervisor, Mr. Goerke, gave her unfairly poor performance reviews in December 2005, December 2006, and December 2007, which allegedly resulted in her not being considered for director-level positions. She alleges that Mr. Goerke and other members of management also denied her various growth and advancement opportunities during 2006 and 2007.

Regarding her individual retaliation claim, Plaintiff alleges that Defendant has retaliated against her because she questioned Defendant's allegedly discriminatory practices and because she initiated this lawsuit. Specifically, Plaintiff claims that Defendant failed to promote her although she was the most well-qualified candidate, failed to correct her pay disparity based on gender, and failed to select her for any advancement track assignments.

**B.    Plaintiff's Motion for Leave to File a Second Amended Complaint**

According to Plaintiff, after she filed her Amended Complaint, Ms. Abt and Ms. Walker came forward to be included in this class-action as named plaintiffs. Ms. Abt is a current female employee of Lockheed in its King of Prussia, Pennsylvania office. She has been employed by Lockheed for over fifteen years. In 2003, she reached the L5-level as a Manager of the Management and Data Systems' Engineering Leadership Development Program. Ms. Abt alleges that in 2007 her male supervisor, Mr. Hauser, gave her an unfairly negative performance review that affected her compensation and opportunities for advancement. She also claims that she received another unfair performance review in 2008 because of her gender. She further alleges that she was passed over for various management positions because of her gender and that "upper-management" directly intervened to ensure that those positions were filled by male

employees. (Second Am. Compl. ¶ 127). Ms. Abt claims that in August 2009, she was demoted from her L5 position to an E5 position as a result of her gender and that she has suffered retaliation from Defendant because she questioned Defendant's discriminatory practices.

Ms. Walker is a current Lockheed employee who resides in Texas.[2] She works for Lockheed's Aeronautics Business Area, and has held various E4 positions in human resources. Ms. Walker alleges that she has been paid less than her male comparators since 2003, and that she was not promoted to University Relations Manager (L5) because of her gender in January or February of 2009.

All three Plaintiffs were employed in different divisions at Lockheed, in different geographic locations, and had different immediate supervisors. Nevertheless, they each allege that they were injured as a result of the same company-wide discriminatory policies and practices. Specifically, they each allege that they were denied equal compensation and advancement because of Defendant's overly subjective promotion criteria, "bell curve" evaluation system, discriminatory mentoring/sponsors policies, "stretch" positions policies, and posting and promotion policies. (Second Am. Compl. ¶¶ 140, 142).

In October 2009, Plaintiff made a motion for leave to file a Second Amended Complaint. The Second Amended Complaint: (1) expanded the temporal scope of the Title VII class definition by approximately one year; (2) asserted new factual allegations particular to Plaintiff's individual claim; and (3) added individual claims for discrimination and retaliation on behalf of Ms. Abt and Ms. Walker and added them as class representatives. By Consent Order dated April 19, 2010 (Doc. No. 191), Judge Donio granted Plaintiff leave to amend to include her new

---

[2] Plaintiff does not specify where Ms. Walker is employed by Lockheed.

factual allegations particular to her individual claims. Defendant did not oppose Plaintiff's amendment of the class definition.[3] Thus, in deciding Plaintiff's motion for leave to amend, Judge Donio considered only whether to allow Plaintiff leave to amend to add Ms. Abt and Ms. Walker as named plaintiffs.

###    C.    The Discovery Disputes on Appeal

During the course of discovery in this matter, Plaintiff requested, among other things, company-wide data regarding the age and race of Lockheed employees as well as data and information regarding employment positions above the L7 and E7 levels. Plaintiff also requested information concerning Lockheed's practices and policies for identifying, addressing, and remedying other forms of discrimination. Regarding the temporal scope of discovery, Plaintiff sought discovery dating back two years with respect to the class for the Title VII claim, one year with respect to the subclass for the NJLAD claim, and fifteen years for all requested electronic data.[4] Although Defendant produced significant amounts of responsive discovery, it objected to producing any discovery regarding age or race or any forms of discrimination other than gender discrimination and redacted that information from all documents produced to Plaintiff. Defendant also objected to producing discovery regarding employment positions above the L7 and E7 levels, or any information or data for business areas other than Plaintiff's area of business. Defendant further refused to produce any discovery not within the temporal scope of

---

[3] Plaintiff filed her initial Complaint in December 2008. She filed an Amended Complaint as of right on March 16, 2009 and made her motion before Judge Donio for leave to file a Second Amended Complaint on October 2, 2009. Because Defendant contests only the addition of Ms. Abt and Ms. Walker, the Court relies on the allegations as stated in the Second Amended Complaint regarding Plaintiff's individual claims and the class-action claims for purposes of deciding this appeal.

[4] The Second Amended Complaint defines the putative class as beginning on March 21, 2007.

the putative class.

In October 2009, Plaintiff moved before Judge Donio to compel outstanding discovery. Rather than moving to compel responses to particular discovery requests, Plaintiff moved to obtain a ruling on the general scope of discovery. Specifically, Plaintiff sought a ruling that: (1) she is entitled to company-wide discovery, not merely discovery from within Plaintiff's business area; (2) she is entitled to discovery regarding employment levels above Plaintiff's current status (L6); and (3) she is entitled to discovery dating back two years with respect to the class for the Title VII claim, one year with respect to the subclass for the NJLAD claim, and fifteen years for all requested electronic data.

Also in October 2009, Defendant made a separate motion for a protective order declaring that Plaintiff was not entitled to discovery regarding age and race data, or information regarding any other forms of discrimination other than gender discrimination. Defendant made an additional motion in November 2009 requesting that Magistrate Judge Donio bifurcate discovery to first address only class certification issues. Defendant requested that discovery regarding the merits of Plaintiff's claims be stayed until after the class certification stage.

### D.    Magistrate Judge Donio's Rulings

Judge Donio's two June 23, 2010 opinions disposed of all three pending motions described above. Regarding Defendant's motion to bifurcate discovery, Judge Donio held that Plaintiff was currently entitled to discovery regarding the merits of Plaintiff's claims to the extent that the class certification requirements of Rule 23 incorporate substantive aspects of Plaintiff's claims. Judge Donio therefore denied Defendant's motion to bifurcate discovery, but noted that discovery should be staged and that Defendant could object to any substantive discovery that is

not related to class certification issues.

Judge Donio also denied Defendant's motion for a protective order regarding discovery of age and race data. Judge Donio held that such discovery was relevant under the liberal standard set by Rule 26 and that Defendant had not demonstrated that production of responsive discovery would be unduly burdensome. Regarding anecdotal information related to other forms of discrimination, Judge Donio held that Plaintiff was entitled to this discovery subject to Plaintiff's counsel's representation that: "All we would be asking about and all we believe we're entitled to discover is if and how [Defendant] identifies and assesses other forms of discrimination vis-a-vis gender and what, if any, steps they take to remedy the other forms of discrimination they find." (Mem. Op. & Order dated June 23, 2010, Doc. No. 208, at 28 (quoting Hearing Trans. Dec. 8, 2009 Hearing, Doc. No. 120, at 66:9-13)). Defendant made a motion for clarification regarding this ruling. Judge Donio subsequently clarified her June 23 Opinion by ruling that "Defendant shall produce all historical personnel data to the extent that such data exists in either the LMPeople or LMCareers databases for putative class members and their comparators." (Order dated Aug. 16, 2010).

Regarding Plaintiff's motion to compel, Judge Donio held that discovery was not limited to Plaintiff's business area within the company, that Plaintiff was entitled to information regarding employees in positions above her own L6 position, and that all discovery should be limited to two years prior to the beginning of the putative class. Finally, Judge Donio granted Plaintiff's motion for leave to file a Second Amended Complaint adding Ms. Abt and Ms. Walker as named plaintiffs and class representatives.

### E.     Scope of Appeal and the Parties' Arguments

Defendant appeals Judge Donio's rulings that: (1) race and age data are discoverable; (2) information regarding L8 and L9 "officer-level" positions is discoverable;[5] and (3) Plaintiff may amend her complaint to join Ms. Abt and Ms. Walker.  Defendant does not appeal the remainder of Judge Donio's rulings.[6]

Regarding the discoverability of race and age data, Defendant argues that Judge Donio erred as a matter of law in permitting Plaintiff to discover data regarding other protected classes. Specifically, Defendant asserts that Plaintiff "is not entitled to information related to age, race, or any other protected classification besides sex because these are not relevant" under Rule 26(b)(1) to Plaintiff's gender discrimination claim.  (Def. Br. 12-13).  Defendant interprets Rule 26(b)(1) to mean that "discovery in an employment-discrimination case <u>must</u> be confined to discovery about the <u>same type of discrimination</u> alleged by the plaintiff."  (Def. Br. 14) (emphasis in original).  Defendant also submits a certification from its expert stating that age and race data are not necessary for Plaintiff's expert to conduct a regression analysis of gender discrimination. Notably, Defendant does not make any arguments before this Court that production of age or race data would be unduly burdensome or that it would be otherwise unfair for Defendant to have to

---

[5] Although Defendant originally objected to production of any discovery regarding positions above the L6 level, it now consents to production of discovery regarding L7 positions but objects to producing discovery related to positions above L7.  Defendant claims that this distinction is justified because L7 is a director-level position but L8 and L9 positions are officer-level positions.

[6] Defendant has made a Motion for Reconsideration/Clarification regarding the temporal scope of discovery. However, Defendant does not appeal any portion of Judge Donio's rulings regarding the temporal scope of discovery.

produce that information.[7]

In response, Plaintiff asserts three theories regarding the relevance of age and race data as well as information regarding other forms of discrimination. First, she submits an affidavit from her expert that age and race data are necessary to conduct a reliable and accurate regression analysis regarding the alleged gender discrimination at Lockheed. Second, she claims that anecdotal evidence regarding how Defendant identifies, addresses, and remedies other forms of discrimination may be relevant to proving gender discrimination if Defendant took measures to identify and redress some forms of discrimination but failed to take any measures to identify and redress gender discrimination. (Pl. Br. 14). Third, she argues that "if Lockheed has an 'equal employment opportunity problem' with members of one protected class, that information is relevant to the issue of whether it similarly has an 'equal employment opportunity problem' with respect to the protected class at issue - here, women." (Pl. Br. 14).

Regarding discoverability of L8 and L9 "officer-level" positions, Defendant claims that Plaintiff "lacks standing to challenge employment decisions at those levels" because she never sought nor was denied such positions. (Def. Br. 22). Defendant also argues that this discovery is irrelevant under Rule 26(b)(1) because Plaintiff alleges only that there is a "glass ceiling" for women between the L6 and L7 levels, not between L7 and L8 or L9. (Def. Br. 23). Defendant further argues that production of L8 and L9 information raises legitimate privacy concerns regarding its officers, which begin at the L8 level. Plaintiff responds that discovery regarding L8 and L9 positions is relevant because Plaintiff alleges that the glass ceiling for women begins at

---

[7]Although otherwise permissible discovery may be limited by a showing of annoyance, undue burden, or the like, Rule 26(c), Defendant does not claim that the requested discovery represents an undue burden or should be limited for any other reason. Defendant made that argument before Judge Donio, but it has not renewed the argument here.

the L7 level but continues through the higher levels. Plaintiff also argues that Defendant waived its right to object to producing "officer-level" discovery because it asserts the distinction between "officer-level" and "director-level" positions for the first time before this Court.

Regarding leave to amend to add Ms. Abt and Ms. Walker, Defendant claims that Judge Donio improperly applied Rule 15 rather than Rule 20. Defendant asserts that because Plaintiff moves to join new parties, the Court must determine whether joinder is proper pursuant to Rule 20's more stringent standard. Rule 20 permits joinder only if the new plaintiff asserts a right to relief stemming from the same transaction, occurrence or series of transactions and the claims implicate common questions of law and fact. According to Defendant, because Ms. Abt and Ms. Walker worked in different geographic locations, were supervised by different managers, and were subject to different incidents of alleged discrimination, they should not have been joined. Defendant also claims that the mere allegation of a company-wide policy of discrimination is insufficient to justify joinder if the challenged conduct is based on individualized implementations of a common policy by different people under difference circumstances.

Plaintiff responds that, as a matter of fact, Ms. Walker, Ms. Bell, and Ms. Abt were all subject to the same company-wide discriminatory practices and policies. Plaintiff further responds that Defendant misconstrues the standard for joinder. According to Plaintiff, joinder is permissible if a plaintiff alleges a pervasive policy of discrimination in addition to their specific instances of discrimination.

## II.    STANDARD OF REVIEW

A district court will overturn a magistrate judge's non-dispositive ruling only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(a)(1)(A). Rulings

on discovery motions are considered nondispositive matters subject to the clearly erroneous standard of review.  See Jackson v. Chubb Corp., 45 Fed. Appx. 163, 166 n.7 (3d Cir. 2002).  A motion to amend to add new parties pursuant to Rule 20(a) is a nondispositive motion.  See Chavez v. Ill. State Police, No. 94-5307, 2000 U.S. Dist. LEXIS 650, at *2 (N.D. Ill. Jan. 19, 2000), aff'd, 251 F.3d 612 (7th Cir. 2001); accord Wai Yip Int'l Corp. v. JAAM, LLC, No. 06-5032, 2007 U.S. Dist. LEXIS 86502, at *3 (D.N.J. Nov. 26, 2007); Cincinnati Ins. Co. v. Hawkins, 2007 U.S. Dist. LEXIS 58224, at *1-2 (W.D. Pa. Aug. 9, 2007) (collecting cases holding that joinder motions are nondispositive).

A magistrate's factual conclusion is "clearly erroneous" when, "although there is evidence to support it, the reviewing Court . . . is left with a definite and firm conviction that a mistake has been committed."  United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); S. Seas Catamaran, Inc. v. Motor Vessel Leeway, 120 F.R.D. 17, 21 (D.N.J. 1988), aff'd, 993 F.2d 878 (3d Cir. 1993).  The party filing the appeal has the burden of demonstrating that the magistrate's decision was clearly erroneous.  Exxon Corp. v. Halcon Shipping Co., 156 F.R.D. 589, 591 (D.N.J. 1994).  Unless that burden is met, the magistrate judge's findings should not be rejected even if the district court could have decided the matter differently.  See Andrews v. Goodyear Tire & Rubber Co, 191 F.R.D. 59, 68 (D.N.J. 2000)  (a district court's "simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review"); Toth v. Alice Pearl, Inc., 158 F.R.D. 47, 50 (D.N.J. 1994).  Moreover, there is particularly broad deference given to a magistrate judge's discovery rulings, especially when the magistrate judge has managed the case from the outset and developed a thorough knowledge of the proceedings.  See Engers v. AT&T Corp., No. 98-3660, 2006 U.S. Dist. LEXIS 23028, at

*1-2 (D.N.J. Apr. 17, 2006) (citing <u>Lithuanian Commerce Corp., Ltd v. Sara Lee Hosiery</u>, 177

F.R.D. 205, 214 (D.N.J. 1997)) (citations omitted); <u>Sisters of St. Dominic of Caldwell v. Allied</u>

<u>Irish Bank, P.L.C.</u>, No. 03-3078, 2005 U.S. Dist. LEXIS 17032, at *1 (D.N.J. Aug. 10, 2005).

Nevertheless, a district court reviews de novo a magistrate judge's legal conclusions on a

non-dispositive motion.  <u>See</u> <u>Haines v. Liggett Grp., Inc.</u>, 975 F.2d 81, 91 (3d Cir. 1992).   A

ruling is "contrary to law" when the magistrate judge has "misinterpreted or misapplied the

applicable law."  <u>Doe v. Hartford Life & Accident Ins. Co.</u>, 237 F.R.D. 545, 548 (D.N.J. 2006)

(citing <u>Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co.</u>, 106 F. Supp. 2d 761, 764

(D.N.J. 2000)).

## III.    ANALYSIS

### A.    Discovery of Data Regarding Other Protected Classes

Judge Donio concluded that Plaintiff is entitled to age and race data because Plaintiff's

expert certified that the data was necessary for a complete and reliable regression analysis of

gender discrimination.  Judge Donio found that notwithstanding Defendant's expert's assertion to

the contrary, Plaintiff's explanation satisfied Rule 26's requirement that discovery be "reasonably

calculated to lead to the discovery of admissible evidence."  For the reasons set forth below, this

Court upholds Judge Donio's ruling.

Pursuant to Rule 26(b)(1), a party is entitled to discover "any nonprivileged matter that is

relevant to any party's claim or defense."  Relevance under the rules is a term of art.  It includes

any information that may not be admissible as evidence but  "appears reasonably calculated to

lead to the discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1).  The contemplated

breadth of permissible discovery thus extends well beyond the more confined universe of

evidence admissible at trial.  See Hickman v. Taylor, 329 U.S. 495, 507-08 (1947).  Moreover, in

a putative class-action suit a plaintiff is entitled to discover information relevant to Rule 23's

class certification requirements.   See In re Hydrogen Peroxide Antitrust Lit., 552 F.3d 305, 317

(3d Cir. 2008).  Class certification includes a review of "the substantive elements of the

[proposed class members'] case in order to envision the form that a trial on those issues would

take."  Id.  Thus, even before a class is certified, a plaintiff is entitled to discovery regarding the

substance of the class-action claim to the extent necessary to satisfy Rule 23's certification

requirements.  Id.

    To establish a prima facie disparate impact claim under Title VII, a plaintiff must show

that certain challenged policies have a disproportionately harmful impact on a legally protected

class.  Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994 (1988).  A common and judicially

accepted method for demonstrating this necessary correlation is the use of multivariant regression

models.  See Bazemore v. Friday, 478 U.S. 385 (1986); Jones v. GPU, Inc., 234 F.R.D. 82, 94

(E.D. Pa. 2005).  These models seek to determine whether, after accounting for all relevant

factors, there remains a disparity in treatment of the putative class.  See Segar v. Smith, 738 F.2d

1249, 1274 (D.C. Cir. 1984).  To accurately determine disparate impact, these models include as

"independent variables" all criteria that may significantly affect the model's outcome.  See

Bickerstaff v. Vassar Coll., 196 F.3d 435, 449 (2d Cir. 1999); Bruno v. W.B. Saunders Co., 882

F.2d 760, 767-68 (3d Cir. 1989); Segar, 738 F.2d at 1261 ("The choice of proper explanatory

variables determines the validity of the regression analysis."); see also Bazemore, 478 U.S. at

400 n.10 ("There may, of course, be some regressions so incomplete as to be inadmissible as

irrelevant . . .").  This includes legitimate employment criteria such as experience and education.

See Bruno, 882 F.2d at 767-68. Incorporating those criteria ensures that, in isolating the effect of gender or other unlawful classifications, the model compares similarly situated samples. See Segar, 738 F.2d at 1274.

Plaintiff's expert asserts that a regression model that controls for only legitimate employment criteria ignores the factual possibility that other "illegitimate" criteria may also be biasing the analysis. For example, if a plaintiff asserts a disparate impact age discrimination claim regarding compensation, a regression analysis must accurately isolate the effect of age on similarity situated employees. If the company being analyzed tends to better compensate African-American employees, and most of the company's African-American employees are also over the age of forty, a regression analysis that does not control for the effect of race on compensation would be biased. The model might inaccurately attribute to age what is actually attributable to race. Thus, according to Plaintiff, data regarding other protected classifications may be necessary to construct a reliable regression model and is therefore relevant under Rule 26(b)(1)'s liberal discovery standard.

Judge Donio's conclusion that, in the context of this case, this explanation satisfies Rule 26's standard for discovery was not "clearly erroneous or contrary to law." First, Judge Donio did not err as a matter of law. Contrary to Defendant's contentions, there is no per se legal bar to discoverability of data regarding other prohibited classes. In fact, there are numerous cases where courts rely on regression models that include other prohibited classifications as independent variables or recognize that other prohibited classifications may be appropriate independent variables. See Segar, 738 F.2d at 1261 ("Typically the independent variables in Title VII cases will be race, age, education level, and experience levels."); Hnot v. Willis Grp.

15

Holdings Ltd., 228 F.R.D. 476, 483-84 (S.D.N.Y. 2005) (discussing Second Circuit's use of regression model that included age as variable in regression analysis prepared in race discrimination case); Stender v. Lucky Stores, 803 F. Supp. 259, 299 (N.D. Cal. 1992) (relying on expert report in Title VII gender and race discrimination case where the "independent variables were gender, ethnicity, age, marital status, and seniority").  Moreover, in a case very similar to this one, the Northern District of New York concluded that it was within the court's discretion to allow discovery of data regarding other protected classes because that data was necessary to ensure the accuracy of a regression model.  See Zahorik v. Cornell Univ., 98 F.R.D. 27, 33-34 (N.D.N.Y 1983) (allowing discovery of age data for use in gender discrimination case because such data was "relevant to making comparisons and statistical analyses").

Defendant nevertheless cites Daniel v. Am. Bd. of Emergency Med., 269 F. Supp. 2d 159, 195 (W.D.N.Y. 2003), and Ottaviani v. State Univ. of N.Y., 875 F.2d 365, 367 (2d Cir. 1989), for the proposition that, as a matter of law, "in the context of a discrimination case, a valid regression analysis necessarily requires considering only legitimate, non-discriminatory factors that might correlate with the alleged improper factor at issue."[8]  (Def. Br. 15).

---

[8] After this matter was fully briefed, Defendant submitted a letter arguing that EEOC v. Kronos Inc., No. 09-3219, 2010 U.S. App. LEXIS 18694 (3d Cir. 2010), further supports its position.  Kronos does not support Defendant's position.  It involved a claimant before the EEOC who alleged disability discrimination. Id. at *2.  During the course of the investigation, the EEOC sought information regarding possible race discrimination. Id. at *27.  The EEOC's justification for this request  was that it had expanded its investigation because it had discovered "a scholarly article" suggesting that Kronos' hiring polices had a disparate impact on racial minorities as well as other complaints in the EEOC database alleging race discrimination against Kronos. Id. at *27-28.  The Third Circuit held that this was an impermissible expansion of the EEOC's investigation of the claimant's disability discrimination claim. Id. at *30.  The Court upheld the district court's ruling that the EEOC  was not entitled to the requested information. Id.  Thus, Kronos did not involve a magistrate judge's discretion regarding the permissible scope of discovery under Rule 26.  Moreover, unlike in this case, the EEOC in Kronos did not offer a theory as to how information regarding race was relevant to the claimant's disability discrimination case.  Indeed, the EEOC expressly sought the information for the sole purpose of pursuing a separate race discrimination charge. Id. at *28.  Here, however, Plaintiff  has explained the relevance of race and age data to her gender discrimination claim.

Defendant's reliance on Daniel and Ottaviani is misplaced. Daniel was an antitrust case decided in the context of class certification under Rule 23. Daniel, 269 F. Supp. 2d at 165-66. It did not involve a discovery dispute under Rule 26. The Plaintiff proffered an expert report that applied multivariant regression analysis to prove damages, i.e., whether the alleged antitrust violation had an adverse impact on the class as a whole. Id. at 193-5. The expert's report purported to show that the compensation of emergency medicine physicians was disparately impacted as a result of unlawful collusion by various entities. Id. In commenting on regression analysis generally, the court noted that the first step in a regression analysis is to identify possible legitimate factors that are likely to significantly affect the dependent variable. Id. at 195. Nowhere does the court discuss whether other illegitimate criteria should also be included as independent variables if those criteria would bias the model. More importantly, the court does not address whether discovery regarding those criteria should be prohibited pursuant to Rule 26.

Defendant's reliance on Ottaviani is similarly misplaced. Ottaviani also did not involve a discovery dispute under Rule 26. It concerned appellate review of a final judgment after a bench trial in a Title VII gender discrimination case. Ottaviani, 875 F.2d at 366. The trial court denied the claim, and the plaintiff appealed, claiming, among other things, that the trial court had mistreated its statistical evidence. Id. at 366-67. Again, commenting generally on regression analysis, the Second Circuit noted that the first step in such analysis is to identify legitimate independent variables that may affect the outcome. Id. at 367. The Second Circuit did not address whether parties are entitled to discovery of data regarding other legally protected

classifications if that data is necessary to ensure the accuracy of the regression model.[9]

Thus, Defendant is simply incorrect in its assertion that there is a legal bar to discovery of age and race data in a gender discrimination case.[10]   Discoverability of that information falls within the sound discretion of the Court.   See Fisher v. Borden, Inc., No. 92-4306, 1994 U.S. Dist. LEXIS 21275, at *4 (D.N.J. Oct. 28, 1994) ("The parameters of relevance in the context of any litigation are necessarily imprecise and are left to the Court's discretion, to be exercised within the context of the liberality of the Rules.").

Second, as a matter of fact, Judge Donio did not commit clear error when she found that Plaintiff's request for age and race data was within the scope of permissible discovery.  See Fed. R. Civ. P. 26(b)(1).  Plaintiff asserts that in order to compile a reliable regression model regarding alleged gender discrimination, she must isolate the impact that other variables may have on compensation and advancement, including the possibility that race and age may play a

---

[9] Defendant lists various cases in addition to Daniel and Ottaviani for the general proposition that in a discrimination case, the plaintiff is only entitled to discovery regarding the same type of discrimination alleged.  However, most of those cases deal with plaintiffs assenting individualized, nonclass-action claims or plaintiffs who failed to articulate any "particularized need" for the requested discovery.  See Robbins v. Camden City Bd. of Educ., 105 F.R.D. 49, 59 (D.N.J. 1985) (finding that plaintiff's requests for additional data in nonclass-action suit were not "tied to the allegations of plaintiff's complaint"); see also Collins v. J.C. Nichols Co., No. 90-0389, 1991 U.S. Dist. LEXIS 3285, at *2 (W.D. Mo. Mar. 12, 1991) (concluding without discussion in nonclass-action suit that requests for information regarding other protected classes were overboard because they were not related to allegations in complaint); McClain, 85 F.R.D. at 63 (concluding without discussion that information regarding other protected classes was wholly irrelevant); Smith v. Cmty. Fed. Sav. & Loan Ass'n., 77 F.R.D. 668, 671 (N.D. Miss. 1977) (noting that discovery of other protected classifications was improper where plaintiff did not state particular need for information vis-a-vis allegations in complaint).  These cases do not stand for the proposition that there is a per se legal bar to discovery of data regarding other protected classes.  Furthermore, they are distinguishable from this case because here the Plaintiff asserts a class-action claim and has provided a coherent and substantiated account of how the data is relevant to her stated gender discrimination claim.

[10] As Defendant notes, in Prouty v. National Railroad Passenger Corp., 99 F.R.D. 545, 546 (D.D.C. 1983), an age discrimination case, the court denied the plaintiff's request for discovery of race data even though the plaintiff's expert claimed that the data was necessary for the accuracy of his regression model.  However, contrary to Defendant's assertion, Prouty does not establish that this information is non-discoverable as a matter of law.  Rather, it reflects the rule that, within the context of a particular case, the district court has discretion in defining the reasonable scope of discovery.

role.  Thus, notwithstanding Defendant's expert's counter-statement, Plaintiff has provided a

coherent and substantiated explanation as to how the requested data relates to her stated gender

discrimination claim.  Judge Donio considered both experts' statements (as well as arguments by

Defendant not raised before this Court regarding its costs of producing the requested data) and

concluded that, under the circumstances, the data was within the scope of discovery and not an

improper "fishing expedition."[11]  Obviously, under different circumstances, discovery of similar

data may be properly denied under Rule 26.  However, in light of Rule 26's liberal standard for

relevancy, Plaintiff's coherent explanation regarding its need for the data, and the highly

deferential standard owed to a magistrate's discovery rulings, this Court finds that Judge Donio's

decision to permit discovery of age and race data was not clearly erroneous.[12]

### B.      Discovery of Anecdotal Information Regarding other Forms of Discrimination

Judge Donio held that Plaintiff was also entitled to limited anecdotal information

concerning Lockheed's practices and policies for identifying, addressing, and remedying other

forms of discrimination.  For the reasons discussed below, this Court affirms Judge Donio's

ruling.

Defendant again asserts that Judge Donio erred as a matter of law because there is a legal

---

[11] Judge Donio properly noted that Defendant may still raise its objections to Plaintiff's expert's regression methodology in the context of a Daubert motion.  Additionally, Defendant may raise objections regarding the admissibility of age and race data if that data, in and of itself, is unduly prejudicial under Fed. R. Evid. 403.

[12] Defendant also asserts that age data is not necessary for Plaintiff's regression analysis because Defendant is willing to provide service dates, which are a better indicator of work experience than age.  This argument is unavailing because, as noted above, Plaintiff's expert claims that age data is relevant in its own right for ensuring the reliability of the model.  Thus, even if service dates were a better indicator of work experience, Plaintiff has shown how age data is relevant to her gender discrimination claim and Judge Donio did not commit clear error in permitting discovery of that data.

bar to discovery of information regarding other forms of discrimination. Defendant incorrectly

cites Robbins v. Camden City Bd. of Educ., 105 F.R.D. 49 (D.N.J. 1985), in support of that

proposition. Robbins involved a race and age discrimination claim. Robbins, 105 F.R.D. at 54.

The plaintiff propounded an "excessive number of interrogatories" and other discovery that

sought, among other things, information regarding discrimination based on other protected

classes. Id. at 61-62. Significantly, the plaintiff in Robbins offered no explanations as to how

this discovery was relevant to her age and race discrimination claims. Id. Indeed, in deciding

the matter, the court noted that the "disposition of this motion has been made extremely difficult"

because of the "minimal effort by the parties to present focused issues to the [c]ourt." Id. at 62.

Thus, the court exercised its discretion and denied discovery of information regarding other

forms of discrimination within the context of the plaintiff's excessive discovery requests and her

failure to articulate a specific reason as to why the information was relevant to her stated claims.

Id. Robbins does not hold that there is a per se legal bar to discovery of anecdotal information

regarding other forms of discrimination.[13]

Here, Judge Donio was presented with a much different situation than in Robbins.

Plaintiff has requested very specific and limited information. More importantly, she has

presented a coherent and plausible theory as to how that information is relevant to the alleged

---

[13] Defendant makes much of Judge Donio's reliance on Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). In Fuentes, the Third Circuit noted in dicta that to survive summary judgment in an employment discrimination case, an employee could present evidence of discrimination against "other protected categories of persons." Id. at 765. Fuentes is pertinent in this case to the extent that it illustrates that evidence of other forms of discrimination may be probative of the specific discrimination alleged. See id. (listing different kinds of evidence, including evidence of other forms of discrimination, that may be probative of discriminatory motivation). Thus, in relying on Fuentes to support her ruling that the requested discovery was permissible, Judge Donio's decision was not contrary to law. Defendant also cites McClain, 85 F.R.D. at 53; Prouty, 99 F.R.D. at 545, and Zahorik, 98 F.R.D. at 27, in support of her claim that Judge Donio erred as a matter of law. None of those cases establish a per se legal bar to discovery of information regarding other forms of discrimination. Moreover, none of those cases involved narrowly tailored discovery requests supported by a coherent theory regarding their relevance to the plaintiff's allegations.

gender discrimination.  She alleges that her and the putative class were harmed by company-wide

policies and practices.  She asserts that if Lockheed has company wide policies and practices

aimed at identifying, addressing, and remedying other forms of discrimination, but has not taken

similar steps to dealing with gender discrimination, that evidence is relevant to her disparate

impact claim.  Additionally, Judge Donio expressly limited permissible discovery to "if and how

[Defendant] identifies and assesses other forms of discrimination . . . and what, if any, steps

[Defendant] takes to remedy the other forms of discrimination they find."  (Mem. Op. & Order

dated June 23, 2010, Doc. No. 208, at 28 (quoting Hearing Trans. Dec. 8, 2009 Hearing, Doc.

No. 120, at 66:9-13)).  In short, the discovery at issue is narrow and "appear[s] reasonably

calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Under

these circumstances, Judge Donio's decision was not clearly erroneous or contrary to law, and it

is entitled to appropriate deference.[14]

### C.      Discovery Regarding L7 Positions and Above

Defendant also appeals Judge Donio's decision permitting discovery concerning

Lockheed's director level positions and above.  Defendant asserts that the discovery of positions

above L7 is improper because Plaintiff did not personally apply for any position above that level.

This Court upholds Judge Donio's ruling permitting discovery of L7 positions and above.

Plaintiff's allegations are not limited solely to the claim that she was denied a L7

position.  Plaintiff specifically alleges that Lockheed's policy of not posting available positions

"at the L7 level <u>and above</u>" has a disparate impact on women employees who hold positions

---

[14]   Again, Defendant may, at the appropriate time, object to the use of evidence regarding other forms of
discrimination as unduly prejudicial under Fed. R. Evid. 403.

below the L7 level.  (Am. Compl. ¶ 49) (emphasis added).  She alleges, on behalf of herself and

the putative class of women, that female employees are not promoted to L7 and E7 positions <u>and</u>

<u>above</u> at the same rate as male employees because of company-wide policies and practices.

Plaintiff is entitled to discover whether employees in L7 positions and above are in fact similarly

situated to her and the putative class and how quickly women are promoted to those positions.

Thus, as Judge Donio correctly held, "for class certification purposes, Plaintiff may rely on an

expert's statistical analysis of the amount of time it takes female employees to reach positions

above [the L7 level], which would necessarily require discovery of information about [L7

positions and above]."[15]  (Mem. Op. & Order dated June 23, 2010, Doc. 208, at 15 (citing <u>Dukes</u>

<u>v. Wal-Mart Stores, Inc.</u>, 222 F.R.D. 137, 161 (N.D. Cal. 2004), <u>aff'd</u>, 474 F.3d 1214 (9th Cir.

2007)).

### D.      Leave to Amend to Add Ms. Abt and Ms. Walker

Finally, Defendant appeals Judge Donio's ruling allowing Plaintiff to add Ms. Abt and

Ms. Walker as named plaintiffs.  Defendant claims that Judge Donio committed legal error by

incorrectly applying Rule 15's more liberal standard for joinder rather than the more stringent

standard under Rule 20.  Defendant further claims that Plaintiff is not entitled to add Ms. Abt and

Ms. Walker under Rule 20's more stringent standard because simply alleging company-wide

discriminatory policies and practices does not satisfy Rule 20's requirement that the claims arise

---

[15] Defendant argues for the first time on appeal that Plaintiff is entitled to discovery of L7 positions but not L8 and
L9 positions because those positions constitute "officer-level" positions.  This is a distinction  without a difference.
Plaintiff clearly alleges that Lockheed's policies and practices result in women being advanced to "L7 positions <u>and</u>
<u>above</u>" at a slower rate than men.  Whether some of those positions are "officer" positions and some are "director"
positions is of no consequence.  Furthermore, to the degree that discovery of officer-level positions raises special
privacy concerns, those concerns may be addressed by way of a protective order limiting the distribution and use of
discovery.

"out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1). For the following reasons, this Court upholds Judge Donio's ruling.

Defendant's argument that Judge Donio did not apply Rule 20 is simply incorrect. Judge Donio expressly found that "[w]here a plaintiff seeks leave to amend a complaint to add new parties to the action, the Court must . . . consider the proposed amendment under Fed. R. Civ. P. 20(a)." (Mem. Op. & Order dated June 23, 2010, Doc. No. 208, at 10). Judge Donio then recounted Rule 20(a)(1)'s requirements for joinder, discussed case law specifically interpreting those standards, and applied that authority to the facts of this case. (Id. at 10-20). Judge Donio did not err as a matter of law by applying the wrong legal standard.

Rule 20(a)(1) provides that plaintiffs may be joined if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." The requirements prescribed by Rule 20(a)(1) are to be liberally construed in the interest of convenience and judicial economy. Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). The Supreme Court has expressed a policy that strongly encourages joinder consistent with fairness to the parties. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966). Consequently, "joinder falls within the discretion of the court and is to be liberally granted." Collins v. Cnty of Gloucester, No. 06-2589, 2008 U.S. Dist. LEXIS 29327, at *6 (D.N.J. Apr. 9, 2008); see Snodgrass v. Ford Motor Co., No. 96-1814, 2002 U.S. Dist. LEXIS 13421, at *5-6 (D.N.J. Mar. 28, 2002). Nevertheless, "[i]n exercising its discretion [whether to permit joinder], the District Court must provide a reasoned analysis that comports with the requirements of the Rule, and that is based on the specific fact pattern presented by the

plaintiffs and claims before the court."  Hagan v. Rogers, 570 F.3d 146, 157 (3d Cir. 2009).

Regarding Judge Donio's application of Rule 20(a)(1), Defendant does not take issue with Judge Donio's conclusion that Ms. Abt and Ms. Walker's claims satisfy the second requirement – that there is a question of law or fact common to all plaintiffs.[16]  (Def. Br. 10). Rather, Defendant argues that Ms. Abt and Ms. Walker's claims do not satisfy the first requirement – that they arise out of the same transaction or occurrence.  (Def. Br. 26). Specifically, Defendant argues that all three women worked in different geographic locations, were in different departments, had different titles, and reported to different supervisors. Defendant also argues that it is insufficient to allege that all three Plaintiffs' claims arise out of company-wide policies and practices.

Plaintiffs respond that their claims are not so factually dissimilar to prevent joinder under Rule 20(a)(1) because all three Plaintiffs are:

> (1) female employees of Lockheed;
>
> (2) subject to the same Lockheed company-wide policies and practices;
>
> (3) paid by the defendant Lockheed;
>
> (4) assigned job classifications from the standardized and uniform Lockheed company-wide classification system;
>
> (5) assigned pay grades from the standardized and uniform Lockheed company-wide compensation scheme;

---

[16] Defendant  would be hard pressed to do so.  This prong "does not require precise congruence of all factual and legal issues; indeed joinder may be permissible if there is but one question of law or fact common to the parties." Directv, Inc. v. Gallagher, Nos. 03-2474, 03-2571, 03-5300, 2004 U.S. Dist. LEXIS 28010, at *3-4 (D.N.J. Feb. 4, 2004) (citations omitted); see also Morris v. Paul Revere Ins. Grp., 986 F. Supp. 872, 885 (D.N.J. 1997).  Ms. Bell, Ms. Abt, and Ms. Walker all assert gender discrimination claims under Title VII based on disparate impact of company-wide policies and practices.  This is sufficient to satisfy the second prong of Rule 20(a)(1)'s joinder requirement.

(6) offered (or deprived of) the same Lockheed standardized
employee benefits;

(7) allowed (or deprived of) participation in Lockheed's
standardized leadership development programs;

(8) subject to the same company-wide discriminatory
implementation, treatment and impact of the company-wide
policies;

(9) claiming the same categories of damages - disparate pay and
promotion opportunities; and

(10) subject to the same statutes of limitations time period which
mandate the same general temporal scope of discovery applicable
to the three class representatives and the class.

(Pl. Br. 5) (formatting altered). Plaintiff also asserts that, as a matter of law, allegations of

company-wide policies and practices that have a disparate impact may be sufficient to justify

joinder under Rule 20(a)(1) if the plaintiff alleges a "general and pervasive corporate policy of

discrimination." (Pl. Br. at 6).

Rule 20(a)(1)'s "transaction or occurrence requirement is applied liberally by courts in

order to achieve the rule's goals of promoting judicial economy and efficiency." Snodgrass,

2002 U.S. Dist. LEXIS 13421, at *5-6 (internal quotation marks omitted). The purpose of Rule

20(a)(1) is to "promote trial convenience and expedite the final determination of disputes,

thereby preventing multiple law suits." Id. at *6 (internal quotations and citations omitted).

Thus, courts recognize that "'[t]ransaction' is a word of flexible meaning[, and] may comprehend

a series of many occurrences, depending not so much upon the immediateness of their connection

as upon their logical relationship.'" Lopez v. City of Irvington, No. 05-5323, 2008 U.S. Dist.

LEXIS 14941, at *7 (D.N.J. Feb. 27, 2008) (quoting Mosley v. Gen. Motors Corp., 497 F.2d

1330, 1333 (8th Cir. 1974)).

In King v. Pepsi Cola Bottling Co., 86 F.R.D. 4, 5 (E.D. Pa. 1979), a case relied on by Plaintiffs and Judge Donio, the court analyzed whether Rule 20(a)(1)'s "transaction or occurrence" requirement applied to six African-American plaintiffs who alleged both specific and general practices of racial discrimination by their employer. Although several of the plaintiffs worked at the same plant and under the same supervisor, at least one of the plaintiffs was assigned to a separate department and reported to a different supervisor. Id. at 6. Nevertheless, "each plaintiff alleg[ed] that he [was] the victim of a pervasive corporate policy of discrimination and rais[ed] the common question of whether such a policy [did] indeed exist." Id. The court therefore concluded that although differences between the individual claims would require individualized evidence not common to all claims, it was proper to join the claims because they were "united . . . by the allegations of a company policy of discrimination." Id. at 5.

The court in King adopted the standard set out in Mosley, which is "perhaps the leading case on the joinder of Title VII plaintiffs under Rule 20." Alexander v. Fulton Cnty, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), partially overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003). Mosely involved ten plaintiffs who brought individual race and gender discrimination claims against their employer as well as a class-action discrimination claim. Mosely, 497 F.2d at 1331. In addition to alleging specific instances of discrimination, the plaintiffs also alleged that they were subject to "a company-wide policy . . . designed to discriminate against [African-Americans] in employment." Id. at 1334-35. Because the plaintiffs' individual claims "presented a variety of issues having little relationship to one another," the district court severed the claims. Id. at 1332. The Eighth Circuit reversed. Id. at

1334.  It held that Rule 20(a)(1) was intended to be applied liberally and that "all 'logically'

related events entitling a person to institute a legal action against another generally are regarded

as comprising a transaction or occurrence." Id. at 1332.  Consequently, the court found that

joinder of the claims was proper because the plaitiffs' common allegation of a company-wide

policy of discrimination arose out of the same "transaction or occurrence." Id. at 1334.

Mosely has been favorably cited and followed by this district as well as other district

courts in the Third Circuit. See Lopez, 2008 U.S. Dist. LEXIS 14941, at *7 (citing Mosley and

denying motion to sever claims because plaintiffs alleged general "pattern or practice of

excessive force" by the defendants); Boyer v. Johnson Matthey, Inc., No. 02-8382, 1991 U.S.

Dist. LEXIS 3285, at *1-2 (E.D. Pa. Apr. 16, 2004) (citing Mosley and denying motion to sever

where plaintiffs, who worked for defendant employer at different times, on different shifts, and in

different departments, alleged pattern and practice of discrimination); Miller v. Hygrade Food

Prods. Corp., 202 F.R.D. 142, 144 (E.D. Pa. 2001) (citing Mosley and holding that "plaintiffs

allege that [defendant] employs a subjective decision-making policy designed to discriminate

against African-American employees . . . [and] [a]ll of the specific incidences of discrimination

flow from this general policy, or pattern and practice, and therefore are logically related and arise

out of the same series of transactions or occurrences").  Mosley supports Judge's Donio's

decision to permit joinder in this case and Defendant has not cited any precedent from this

Circuit rejecting Mosely.

Defendant nevertheless contends that Mosley and its progeny are misguided.  Defendant

cites two district court cases from other circuits that declined to follow Mosley:  Byers v. Illinois

State Police, No. 99-8105, 2000 U.S. Dist. LEXIS 17929, at *12-13 (N.D. Ill. Dec. 4, 2000) and

Smith v. North American Rockwell Corp., 50 F.R.D. 515, 520 (N.D. Okla. 1970).  Defendant
also claims that the Supreme Court's opinion in General Telephone Co. of the Southwest v.
Falcon, 457 U.S. 147 (1982), and the Third Circuit's decision in Dickerson v. United States Steel
Corp., 582 F.2d 827 (3d. Cir. 1978), undermine the reasoning in Mosley.  Judge Donio properly
concluded that these authorities are unpersuasive in the context of this case and that joinder of
Ms. Abt and Ms. Walker's claims was proper under Rule 20(a)(1).

First, neither Falcon nor Dickerson undermines the reasoning in Mosley.  Falcon involved
the standard for class certification under Rule 23.  Falcon, 457 U.S. at 150-52.  The plaintiff was
a Mexican-American employee who brought a discrimination claim alleging that he was not
promoted because of his nationality.  Id. at 149.  The plaintiff also sought to certify a class that
included Mexican-Americans who applied for employment but were not hired because of their
ethnicity.  Id.  The issue before the Court was whether the plaintiff could properly maintain his
broad class-action claim under Rule 23.  Id. at 152-53.  The Supreme Court held that the plaintiff
was not an appropriate class representative because his alleged injury was conceptually distinct
form the alleged class.  Id. at 158-60.  Nowhere did Falcon address the scope of joinder under
Rule 20(a)(1).  Judge Donio properly concluded that Falcon has no bearing on Plaintiff's motion
for joinder pursuant to Rule 20.

Defendant's reliance on Dickerson is similarly misplaced.  Dickerson involved a very
specific procedural question.  At the close of the plaintiff's case in a class-action suit, the district
court dismissed various class-wide claims.  Dickerson, 582 F.2d at 830.  However, the court sua
sponte reviewed the testimony of various class witnesses who were not named plaintiffs and
determined that they could pursue individual claims against the defendant.  Id.  The defendant

appealed, claiming that the district court abused its discretion in <u>sua</u> <u>sponte</u> recognizing previously un-asserted individual claims. <u>Id.</u> On appeal, the individual plaintiffs claimed that the district court had discretion to institute their claims pursuant to "equitable intervention" under Rule 24, which permits intervention if there are questions of "law and fact in common." <u>Id.</u> at 831-32. Within this context, the Third Circuit determined that the district court improperly instituted the new individual claims because they were not sufficiently linked by common issues of law and fact. <u>Id.</u> at 832-33. Thus, <u>Dickerson</u> sheds very little, if any, light on the scope of joinder under Rule 20(a)(1)'s "transaction or occurrence" prong; especially in a case such as this one where the core of all the individual and class-action claims is an allegation of company-wide discriminatory policies and practices. Judge Donio properly determined that <u>Dickerson</u> is unhelpful in the context of this case.

Second, the out-of-circuit district court opinions cited by Defendant are unpersuasive; especially in light of the fact that <u>Mosley</u> has been favorably cited and followed by courts in this Circuit. In <u>Smith</u>, the Northern District of Oklahoma stated that "a general policy" that "might affect each plaintiff" is insufficient to justify joinder. <u>Smith</u>, 50 F.R.D. at 515-22. <u>Smith</u> did not involve claims by plaintiffs that each specifically identified the same company-wide polices that allegedly had a disparate impact on them. <u>Id.</u> In <u>Byers</u>, the Northern District of Illinois recognized that, as a matter of law, "allegations of a common discriminatory policy or practice, or a company-wide policy of discrimination, could tilt the balance in favor of joinder despite those other factors which might favor severance." <u>Byers</u>, 2000 U.S. Dist. LEXIS 17929, at *4. The court nevertheless determined that in light of the circumstances of that case, joinder was improper. <u>Id.</u> One important fact in <u>Byers</u> that titled the balance towards non-joinder was that

the company-wide policy at issue had changed over time and the plaintiffs who sought joinder had been subject to different company-wide policies.  Id. at *3, 5.

Unlike Byers and Smith, the core of Ms. Bell, Ms. Abt, and Ms. Walker's claims is the allegation that Defendant follows the same company-wide policies and practices that have the effect of discriminating against women.  Plaintiffs each identify the same company-wide polices and practices that purportedly resulted in their being paid less than comparable male employees and being denied advancement opportunities offered to similarly situated men.  Although all three women make various factual allegations that are particular to their claims, those allegations fall within the Plaintiffs' more general claim that Defendant's pervasive and company-wide polices and practices have a discriminatory impact on women.  For example, Ms. Bell and Ms. Abt both claim that their supervisors gave them unfair negative performance reviews on account of their gender, which subsequently impacted their advancement opportunities because of Defendant's company-wide criteria for promotion.  Although these allegations relate to different supervisors, in different locations, regarding different employees, they nevertheless are "logically related" to all three Plaintiffs' core claim that Defendant maintains company-wide discriminatory policies and practices and that each Plaintiff has suffered an injury as a result of that "common occurrence."  Fed. R. Civ. P. 20(a)(1).

Under these circumstances, where all three Plaintiffs' claims flow from their core allegation of the same company-wide misconduct, joinder is proper under Rule 20's liberal standard.  Any inconvenience associated with resolving factual issues particular to each Plaintiff is offset by the commonality shared by all three Plaintiffs' claims.  Judge Donio did not commit error in granting Plaintiff's motion for leave to amend.

**IV. CONCLUSION**

      For the reasons expressed above, the Court denies Defendant's motion appealing portions of Judge Donio's June 23, 2010 rulings.  An appropriate order shall be entered.


Dated:  September 15, 2010                          s/Robert B. Kugler              
                                                       ROBERT B. KUGLER
                                                       United States District Judge